673 S.E.2d 442

**In the Matter of Glenn Oliver GRAY, Respondent.**

No. 26602.

Supreme Court of South Carolina.

Heard Dec. 4, 2008.

Decided Feb. 17, 2009.

408

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis, Jr., Senior Assistant Disciplinary Counsel, both of Columbia, for the Office of Disciplinary Counsel.

Desa Ballard, of West Columbia, for Respondent.

PER CURIAM.

This is an attorney disciplinary matter involving a grievance against Glenn Oliver Gray (Respondent) by his former law firm for engaging in improper billing and reimbursement requests. After a hearing before the Commission on Lawyer Conduct Full Panel (Panel), the Panel recommended that Respondent, who admitted to the alleged misconduct, be suspended for a period of not more than 180 days.

The Office of Disciplinary Counsel (ODC) appeals and argues that the facts and similar case law warrant a harsher sanction. We agree and impose a nine-month suspension. In addition, Respondent is to: (1) pay the costs of this disciplinary proceeding; (2) reimburse the law firm for improper travel requests; (3) continue counseling for one year after the date of his suspension, during which time his therapist shall file a report every six months with the ODC documenting Respondent's progress; and (4) appear before the Committee on Character and Fitness before his reinstatement.

## FACTS

After being admitted to the South Carolina Bar in 1989, Respondent moved to New York to practice law. Respondent was admitted to the New York Bar and New Jersey Bar in 1990. In 2001, Respondent moved back to South Carolina when he was hired as an associate by the Law Firm. In December 2003, Respondent's group manager expressed concern to the Law Firm's management committee regarding Respondent's performance. Based on Respondent's year-end performance evaluation, the management committee formalized an "exit strategy," which would provide for Respondent to continue working at the firm for a period of time in order that Respondent could pursue other employment. In preparation for the meeting with Respondent, a member of the management committee accessed Respondent's "timekeeper's records." In doing so, he found a number of improper billing entries in which there were discrepancies between the time billed and the time actually spent on the item. Based on this discovery, the management committee determined that the appropriate course of action was to immediately terminate Respondent on February 4, 2004.

After Respondent's termination, members of the management committee conducted an audit of Respondent's time entries and reimbursement requests from January 1, 2003, through February 4, 2004. During their investigation, they found a file in Respondent's desk containing old airline tickets, altered copies of those tickets, blank reimbursement forms, scissors, tape, and "white-out" solution.

Due to Respondent's actions, the Law Firm filed a letter with the ODC on May 25, 2004. In this letter, the Law Firm outlined Respondent's misconduct leading up to his termination and explained the results of Respondent's post-termination audit. According to the Law Firm, this investigation revealed "excessive and fictitious time entries on client files during the audit period" and "fictitious travel invoices and tickets." In light of this improper billing, the Law Firm claimed it reimbursed $14,163.31 to the affected clients. The Law Firm also discovered that it had reimbursed Respondent in excess of $600 based on his fictitious travel invoices and airline tickets.

Following a full investigation, the investigative panel authorized formal charges against Respondent. On June 18, 2007, the ODC filed formal charges against Respondent. In his initial Response dated July 18, 2007, Respondent admitted misconduct but denied some of the charges. In an Amended Response, Respondent again admitted misconduct but also admitted to all of the charges. Additionally, Respondent requested that he only be sanctioned to a definite suspension of 180 days.

On December 12, 2007, the Panel conducted a hearing. At the hearing, Disciplinary Counsel presented two members of the Law Firm as witnesses. The first witness, a member of the firm's management committee, explained in detail what transpired before and after Respondent's termination. He testified that in conducting an audit of Respondent's time records he discovered that Respondent had billed more than necessary for his travel and the work performed on clients' cases. He made the decision to further investigate into Respondent's case files after he found billing irregularities. In executing this decision, he searched Respondent's office the morning after Respondent's termination, which led to the discovery of a folder containing materials used to "doctor" the firm's reimbursement forms. Upon further investigation, he determined that Respondent had improperly charged clients and the firm for travel time, travel expenses, airline tickets, and mileage.

A second member of the firm testified he also got involved in the audit of Respondent's files. He testified he was "tasked" with retrieving the original time slips from Respondent's office on February 3, 2004. Around 7:30 p.m. that evening, he went into Respondent's office and found Respondent's time records next to his computer. He then proceeded to copy these records, return the originals, and then left the office around 9:00 p.m. When he returned to his office the next morning around 7:00 a.m., he discovered that the copies he had made the night before were missing from his desk. He also discovered that the original time records were no longer in Respondent's office. After checking with the Law Firm's building security, it was discovered that Respondent had been let into the building some time during the evening of February 3rd.

Although this second witness testified he reviewed Respondent's billing records, he stated he primarily focused on Respondent's improper reimbursement requests as evidenced by the file folder found in Respondent's desk. Based on his investigation, he testified to the following examples of improper reimbursement requests: on several occasions Respondent had altered hotel bills so that he would be reimbursed for a greater amount than was actually charged; Respondent had submitted the same airline ticket or travel expenses twice for reimbursement; and Respondent had altered airline tickets for an amount greater than the actual cost of the ticket.

As part of his case, Respondent called two character witnesses who testified Respondent has a reputation as a "person of honesty" and "he is a truth teller." Both testified as to Respondent's good reputation in his church and in the community. Based upon their knowledge of Respondent, both witnesses believed the allegations of misconduct were "out of character" for Respondent.

Respondent, the final witness at the hearing, testified regarding the details of his law career leading up to his employment as an associate with the Law Firm. When questioned about the misconduct allegations, Respondent admitted to the misconduct and did not dispute the amount the Law Firm calculated for the improper billing and reimbursements. He further admitted that he did in fact alter the amounts and did so while at work and at home. Respondent, however, could not give an estimate as to the amount of time it took for him to alter the documents. Additionally, he claimed that he sent the firm a certified check in the amount of $669.20 for travel reimbursements that had been paid to him. He also denied that he took his original time records and the copies from the Law Firm the night before his termination. Respondent believed that a sanction of a definite suspension of 180 days would be appropriate.

After the hearing, the Panel found Respondent engaged in misconduct in violation of the following Rules of Professional Conduct (RPC), Rule 407, SCACR: Rule 1.5, RPC (fees); Rule 8.4(a), RPC (misconduct); Rule 8.4(d), RPC (misconduct involving dishonesty, fraud, deceit or misrepresentation); and Rule 8.4(e), RPC (misconduct that is prejudicial to the admin-

istration of justice). The Panel also found Respondent violated the following Rules for Lawyer Disciplinary Enforcement (RDLE), Rule 413, SCACR: Rule (7)(a)(1) (violates the RPC, Rule 407, SCACR); Rule 7(a)(5) (engages in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law;); and Rule 7(a)(6) (violates the oath of office taken to practice law in this state and contained in Rule 402(k), SCACR).

Based on these admitted violations of misconduct, the Panel recommended a sanction of definite suspension for a period of 180 days. In making this recommendation, the Panel primarily relied on this Court's decision of *In the Matter of Lee*, 370 S.C. 501, 636 S.E.2d 624 (2006) (holding suspension for 180 days was appropriate sanction for attorney who overcharged client by charging fees for traveling to depositions in which he had participated by telephone from his law firm's office).

## DISCUSSION

The ODC challenges the Panel's recommendation of a definite suspension of 180 days. Although the ODC urges this Court to adopt the Panel's findings of fact and conclusions of law, it requests that this Court impose a sanction of: (1) a definite suspension for at least 180 days; (2) a requirement that Respondent be examined by the Committee on Character and Fitness prior to his reinstatement; (3) a requirement that Respondent reimburse the Law Firm in the amount of $14,163.31; and (4) a requirement that Respondent pay to Disciplinary Counsel the costs of the proceeding in the amount of $1,124.29.

"This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In the Matter of Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight, particularly when the inferences to be drawn from the testimony depend on the credibility of the witnesses." *In the Matter of Marshall*, 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998). "However, this Court may make its own findings of fact and conclusions of

law." *Id.* Furthermore, a disciplinary violation must be proven by clear and convincing evidence. *In the Matter of Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

Because Respondent admitted to all of the allegations of misconduct, the only question before the Court is whether to accept the Panel's recommended sanction of a definite suspension of 180 days.

We believe a more severe sanction is warranted. First, Respondent's case is distinguishable from *In the Matter of Lee,* which the Panel primarily relied upon in making its recommendation. *In the Matter of Lee,* 370 S.C. 501, 636 S.E.2d 624 (2006). In Lee, the attorney was a shareholder in a law firm mainly engaged in representing clients insured by liability insurance companies. On approximately nineteen occasions, the attorney overcharged the insurance carrier by including or causing to be included in its billing statement attorney fees for traveling to depositions held out of town. The attorney, however, knew he had participated in the depositions by telephone at the law firm's office. Additionally, the attorney overcharged the insurance carrier for costs by billing the carrier for mileage for traveling to the depositions on approximately seventeen of the nineteen occasions. When the overcharges were discovered, the attorney admitted to the misconduct and immediately wrote a personal check to the law firm for $10,279.40, the amount the law firm was to reimburse the insurance carrier. The attorney and a senior partner immediately prepared a report for the ODC documenting the attorney's misconduct. The next day, the attorney and a senior partner traveled out of state to the home office of the insurance carrier to report the misconduct and provide the carrier with the ODC report. This Court sanctioned the attorney to a definite suspension of 180 days. The Court reasoned that the attorney had no prior disciplinary history and had been fully forthcoming during the investigation of his misconduct. The Court, however, conditioned attorney's readmission on his appearance before the Committee on Character and Fitness to determine whether he had the "requisite

character and fitness to practice law in this state." *In the Matter of Lee,* 370 S.C. at 505, 636 S.E.2d at 626.

Turning to the facts of the instant case, Respondent over a period of one year engaged in a pattern of conduct that was deliberate, purposeful, deceitful, and fraudulent. Not only did Respondent overcharge clients for his time, he also altered documents to falsify reimbursement expenses. Furthermore, unlike Lee, Respondent never self-reported his misconduct to the ODC. Accordingly, we conclude that Respondent's conduct warrants a sanction of definite suspension of nine months. *Cf. In the Matter of Martin,* 374 S.C. 36, 647 S.E.2d 218 (2007) (holding six-month suspension was the appropriate sanction where attorney allocated time and charges to insurance company's files on which the time billed had not been spent); *In the Matter of Jennings,* 321 S.C. 440, 468 S.E.2d 869 (1996) (finding disbarment was warranted by misconduct including misrepresentation regarding billing of several clients, lack of candor toward the tribunal, destroying documents regarding improper billing, forging signature on satisfaction of judgment, misleading family court judge, and improperly filing lien for attorney's fees).

■ Secondly, we find that Respondent should be required to reimburse a portion of the $14,163.31 amount that the Law Firm claims it is owed as a result of Respondent's actions. *See* Rule 7(b)(7), RLDE, Rule 413, SCACR (stating an additional sanction for misconduct may include restitution to persons financially injured). Although Respondent does not dispute that these fees are "due and owed" to the Law Firm, we do not believe that Respondent should be responsible for the entire amount. Because the Law Firm essentially returned money to clients that it collected and was not entitled to as a result of Respondent's improper time/billing entries, we find the Law Firm did not experience a financial deficit for its reimbursement to these clients with respect to improper billing. However, the $14,163.31 amount also includes fictitious travel expenses which would warrant reimbursement from Respondent to the Law Firm. At oral argument, the parties agreed this amount totaled $669.20. Respondent claimed he sent the Law Firm a certified check in the amount of $669.20 for the improper travel reimbursements that had been paid to him. However, at oral argument Respondent stated that he

never received proof that the Law Firm accepted the check. Accordingly, we find that for Respondent to satisfy this requirement he must provide the ODC with proof that the Law Firm has received the check.

Thirdly, we find Respondent should be required to reimburse Disciplinary Counsel for the costs of these proceedings in the amount of $1,124.29. Although Disciplinary Counsel did not specifically request this relief at the hearing before the Panel, counsel incorporated a request for costs in its notice to Respondent of the formal charges. *See In the Matter of Thompson*, 343 S.C. 1, 13, 539 S.E.2d 396, 402 (2000) ("The assessment of costs is in the discretion of the Court."); Rule 27(e)(3), RLDE, Rule 413, SCACR ("The Supreme Court may assess costs against the respondent if it finds the respondent has committed misconduct."); Rule 7(b)(8), RLDE, Rule 413, SCACR (stating sanctions for misconduct may include the "assessment of the costs of the proceedings, including the cost of hearings, investigations, service of process and court reporter services").

Finally, we agree with Disciplinary Counsel's request that Respondent be required to appear before the Committee on Character and Fitness prior to his reinstatement. *See* Rule 7(b)(10), RLDE, Rule 413, SCACR (the Supreme Court may impose "any other sanction or requirement" as it deems appropriate). As previously stated, Respondent's actions were a deliberate attempt to defraud the Law Firm and its clients. Respondent, however, has yet to provide any explanation for his conduct. Because this lack of explanation indicates an issue with respect to Respondent's character, we believe it should be addressed prior to his reinstatement.[1]

---

1. Because we have sanctioned Respondent to a definite suspension of nine months, we note that pursuant to Rule 33, RLDE, Respondent is required to appear before the Committee on Character and Fitness prior to his reinstatement. *See* Rule 33(g), RLDE, Rule 413, SCACR ("Within 180 days of the matter being referred to the Committee on Character and Fitness, the Committee shall conduct a hearing. If the petition for reinstatement is withdrawn after the start of the hearing, the lawyer must wait two years from the date the petition is withdrawn to reapply for reinstatement. At the hearing before the Committee, the lawyer shall have the burden of demonstrating by clear and convincing evidence that the lawyer has met each of the criteria in paragraph (f).").

In conjunction, we find that Respondent should continue to attend the psychological counseling that he is currently receiving for a period of one year beginning from the date of his suspension. During this one-year period, Respondent's therapist shall file a report with the ODC every six months documenting Respondent's progress. In the event the reports required by this order are not filed or Respondent fails to make satisfactory progress with his counseling, the ODC shall immediately notify this Court.

## CONCLUSION

After a thorough review of the record, we agree with the ODC that a harsher sanction than a 180–day suspension is warranted. Because we are not bound by the Panel's recommendation but rather administer the sanction we deem appropriate, we impose a suspension from the practice of law of nine months. *In the Matter of Thompson,* 343 S.C. at 11, 539 S.E.2d at 401. Within ninety (90) days of the filing of this opinion, Respondent shall also pay the costs of this proceeding in the amount of $1,124.29, and reimburse the Law Firm in the amount of $669.20 if he has not already provided the ODC proof that the Law Firm received his certified check. Additionally, Respondent shall continue the counseling that he is currently receiving for a period of one year beginning from the date of this opinion. During this time, Respondent's therapist shall file a report every six months with the ODC documenting Respondent's progress. Finally, as a condition of seeking reinstatement under Rule 33, RLDE, Rule 413, SCACR, Respondent must appear before the Committee on Character and Fitness for the purpose of determining whether he has the requisite character and fitness to resume the practice of law in this state. Within fifteen (15) days of the filing of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

DEFINITE SUSPENSION.

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.