690 S.E.2d 560

**In the Matter of Karl P. JACOBSEN, Respondent.**

**No. 26783.**

Supreme Court of South Carolina.

Heard Feb. 16, 2010.

Decided March 1, 2010.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Karl P. Jacobsen, of West Columbia, pro se.

PER CURIAM.

This is an attorney disciplinary matter involving multiple allegations of misconduct arising out of Karl P. Jacobsen's (Respondent's) operation of his bankruptcy practice. After a full investigation, the Office of Disciplinary Counsel (ODC) filed formal charges against Respondent with the Commission on Lawyer Conduct (the Commission). Respondent did not file an Answer and, as a result, was found to be in default. After a hearing,[1] a Hearing Panel of the Commission (the Panel) recommended that Respondent be disbarred and ordered to pay costs in the amount of $552.37. Additionally, the Panel recommended that Respondent be ordered to reimburse the Lawyers' Fund for Client Protection for any amount paid

---

1. Respondent did not appear at the hearing.

to clients as a result of Respondent's misconduct. Respondent did not file a brief with this Court. We agree with the Panel's recommended sanction. Accordingly, we disbar Respondent effective the date of this opinion.[2]

## FACTUAL/PROCEDURAL HISTORY

Respondent was licensed to practice law in South Carolina on November 16, 1998. Respondent was a member of a statewide bankruptcy firm (the Firm). Respondent and another member of the Firm worked in the Columbia office while the other member of the Firm operated the Greenville office. Respondent's practice was so extensive that it was estimated that he filed between 700 and 800 bankruptcy cases per year.

In the fall of 2003, one of the Firm's members reported to the Bankruptcy Court and to the Commission that Respondent had committed numerous ethical and rule violations.[3] As a result of Respondent's errors, numerous client matters were

---

**2.** Respondent did not appear at the argument before this Court despite efforts to contact him via certified mail at the West Columbia address on file with the South Carolina Bar as well as an Atlanta address and a San Francisco address.

**3.** Specifically, it was alleged that Respondent: failed to devote sufficient time and attention to client matters; failed to file complete and accurate bankruptcy schedules and statements of debtors' affairs with the Bankruptcy Court; allowed non-lawyer assistants to execute legal documents on behalf of clients and Respondent without the supervision of a lawyer; allowed non-lawyer assistants to negotiate with adverse parties on behalf of clients without the supervision of a lawyer; failed to meet deadlines imposed by the Bankruptcy Court and the bankruptcy trustees for the provision of information to the court; failed to file or to advise clients regarding the filing of motions to reconsider when such motions would be appropriate; failed to timely correct mistakes in documents filed with the Bankruptcy Court; failed to present meritorious claims of clients to the Bankruptcy Court or to timely object to relief sought against debtor clients by creditors; refused to communicate with clients; negotiated with creditors and settled matters on behalf of debtor clients without appropriate client authority and without informing clients of such action; failed to adequately advise clients regarding the ramifications of certain decisions in their bankruptcy matters; refused to communicate with the Bankruptcy Court and the bankruptcy trustees; and allowed bankruptcy cases to be dismissed in order to avoid confronting the Bankruptcy Court to resolve Respondent's own mistakes through appropriate motions.

dismissed by the Bankruptcy Court. In turn, the Office of the United States Trustee filed an action against Respondent in October 2003, seeking for Respondent to be indefinitely suspended from practicing before the Bankruptcy Court. By consent order dated November 7, 2003, the United States Trustee's complaint was resolved and Respondent was required to: (1) withdraw from practicing before the Bankruptcy Court for a period of one year; (2) consult with Lawyers Helping Lawyers and cooperate with any recommendations thereof for medical or other treatment; (3) complete 8.0 hours of approved legal ethics training and 25.0 hours of approved bankruptcy training; and (4) complete an office review by the Practice Management Assistance Program of the South Carolina Bar. In addition, Respondent was prohibited from resuming practice before the Bankruptcy Court, even after one year from the date of the order, unless Respondent provided the United States Trustee with an affidavit summarizing his compliance with the terms of the consent order.

Respondent failed to comply with the provisions of the consent order and, in fact, continued to accept new bankruptcy clients.

In October 2003, one of Respondent's partners terminated her relationship with the Firm. Subsequently, Respondent hired an associate attorney to handle the Firm's Columbia bankruptcy practice. Between December 2003 and February 2004, Respondent continued to accept bankruptcy clients with the intention that the new associate would file these clients' petitions. Apparently unable to manage the Firm's caseload, this associate submitted her resignation on February 27, 2004, which became effective on March 5, 2004.

In March 2004, with over 2000 cases pending before the Columbia Division of the Bankruptcy Court, Respondent informed the Firm's employees that the office would be closing. Respondent took no further action to close his practice or notify his clients.

Due to the numerous grievances filed against Respondent and concerns over the management of his trust account, this Court placed Respondent on interim suspension on March 18, 2004. On February 4, 2005, the Commission on CLE sus-

pended Respondent for failure to comply. In turn, this Court suspended Respondent on April 12, 2005.[4]

Subsequently, the ODC went forward with formal charges on the grievance matters.[5] With respect to each of these matters, Respondent failed to file the requisite bankruptcy documents, failed to communicate with his clients regarding the status of their cases, and failed to inform his clients of his decision to discontinue his bankruptcy practice. Respondent also failed to refund the fees paid by these clients and did not take reasonable steps to protect his clients' interests. Respondent did not respond to the notice of full investigation on any of these matters.

In addition to the above-listed client matters, an investigation also revealed that in 2003 the Firm's trust account was "out of balance." Specifically, there was evidence that a $15,000 shortfall existed in July 2003 and that client funds had been commingled with the Firm's operating account funds. According to the investigation, the Firm had failed to maintain journals, ledgers, checkbook registers, reconciliations, and other required records prior to July 2003.

---

4. During the pendency of these complaints, Respondent was represented by counsel. Subsequently, counsel withdrew and was relieved from representation.

5. These eight complaints involved the following: (1) *the Murray Matter,* in which Respondent's failure to file the required bankruptcy documents resulted in the dismissal of Murray's case; (2) *the Cagle Matter,* in which Respondent's failure to file adequate documentation and appear on Cagle's behalf at a hearing resulted in the dismissal of her case; (3) *the Kinard Matter,* in which Respondent failed to file a bankruptcy petition on behalf of the Kinards despite the Firm's representation that the petition had been filed and a hearing was scheduled; (4) *the Price Matter,* in which Respondent failed to file a bankruptcy petition for Price; (5) *the Moseley Matter,* in which Respondent failed to file a bankruptcy petition despite the Firm's representation that a petition had been filed and that a hearing would be scheduled; (6) *the Snelling Matter,* in which Respondent failed to file a bankruptcy petition; (7) *the Abell Matter,* in which the Respondent failed to communicate with the Abells after an associate, who filed the Abells' bankruptcy petition, left the firm and failed to return bankruptcy documents to the Abells; and (8) *the Baird Matter,* in which Respondent failed to file an emergency bankruptcy petition on behalf of the Bairds resulting in the foreclosure of their home.

Based on its investigation, the ODC filed formal charges against Respondent on April 14, 2009 with the Commission. By certified mail, the ODC sent notification of these charges to a West Columbia address on file with the South Carolina Bar as well as Respondent's last known address in Atlanta and a San Francisco address that was obtained by an ODC investigator.[6] Because Respondent failed to respond or file an Answer to the formal charges, the Commission found Respondent in default and the charges were deemed admitted by order dated July 16, 2009.

On August 27, 2009, the Panel conducted a hearing for the purpose of determining the appropriate sanction to recommend to this Court. Respondent did not appear for this hearing.

In prefacing her case, disciplinary counsel outlined her office's failed attempts to contact Respondent via certified mail and electronic mail. In support of her claim, counsel offered into evidence four exhibits that documented this correspondence. Counsel testified her office had not heard from Respondent since an e-mail exchange in February 2006.

After summarizing the formal charges, counsel called Olean Murray, one of Respondent's former bankruptcy clients to testify regarding the basis of her grievance against Respondent. Murray testified that she paid Respondent to file a bankruptcy petition on her behalf. Under the impression that the petition had been filed, Murray went to the Bankruptcy Court to resolve the matter, but instead discovered that the petition had not been filed. On a second occasion, Respondent failed to appear at a hearing in the Bankruptcy Court on behalf of Murray. Concerned about her case, Murray repeatedly attempted to contact Respondent. According to Murray, Respondent could never be reached at his office. Ultimately, Murray discovered that Respondent was no longer handling bankruptcy cases. Although her case was "discharged" after several years of bankruptcy proceedings, Murray stated that her credit had been "ruined." She further testified that as a result of her bankruptcy and resultant

---

6. The ODC also delivered a copy of the formal charges to our Clerk's Office in the event Respondent inquired about the status of this matter.

credit problems, she had to refinance her $20,000 home for $60,000.

Counsel then relayed to the Panel the following aggravating circumstances: (1) Respondent's demonstrated pattern of misconduct; (2) Respondent's failure to respond to the formal charges and disciplinary proceedings; and (3) Respondent's prior disciplinary history, which included a letter of caution issued on June 21, 2002 regarding his failure to supervise associates and non-lawyer employees in the Firm.

At the conclusion of her case, counsel requested that the Panel issue a report in which it recommended that Respondent be disbarred and ordered to pay the costs of the proceedings and restitution to the Lawyers' Fund for Client Protection.

The Panel issued a report on August 27, 2009 that was filed with the Commission on the same day. As a threshold matter, the Panel clarified that Respondent had been found in default and had failed to appear for the hearing despite attempts by the ODC and the Commission to contact him. Specifically, the Panel noted that the ODC had complied with Rule 14(c) of the South Carolina Rules for Lawyer Disciplinary Enforcement (RLDE)[7] in that it had sent by certified mail a copy of the formal charges to Respondent's last known address in Atlanta and to an alternate address in San Francisco. Additionally, the Panel concluded Respondent was provided sufficient notice of the Panel hearing given the Commission served Respondent with notice of the hearing by certified mail to the Atlanta and San Francisco addresses.

Having found Respondent in default, the Panel reiterated that the Formal Charges were deemed admitted.[8] Based on

---

**7.** Rule 14(c) provides that "[s]ervice upon the lawyer of formal charges in any disciplinary or incapacity proceedings shall be made by personal service upon the lawyer or the lawyer's counsel by any person authorized by the chair of the Commission or by registered or certified mail to the lawyer's last known address. Service of all other documents shall be made in the manner provided by Rule 262(b), SCACR." Rule 14(c), RLDE, Rule 413, SCACR.

**8.** *See* Rule 24(a), RLDE, Rule 413, SCACR (stating that lawyer's failure to answer formal charges shall constitute an admission of the factual allegations); Rule 24(b), RLDE, Rule 413, SCACR (stating that lawyer's

the admitted allegations of misconduct, the Panel concluded that Respondent violated the following South Carolina Rules of Professional Conduct (RPC), Rule 407, SCACR: Rule 1.1 (competence); Rule 1.2 (scope of representation); Rule 1.3 (diligence); Rule 1.4 (communication); Rule 1.5 (fees); Rule 1.15 (safekeeping of property); Rule 1.16 (terminating representation); Rule 3.2 (expediting litigation); Rule 5.1 (responsibilities of partners); Rule 5.3 (responsibilities regarding non-lawyer assistants); Rule 5.5 (unauthorized practice of law); and Rule 8.4(e) (conduct prejudicial to the administration of justice). Based on this misconduct, the Panel found Respondent was subject to discipline pursuant to Rules 7(a)(1), (5), and (6) of the RLDE.[9]

Additionally, the Panel found Respondent "exacerbated his misconduct by failing to respond to disciplinary inquiries." In reaching this conclusion, the Panel pointed to Respondent's failure to communicate with the ODC regarding the investigation, noting his last communication was on February 21, 2006. Due to Respondent's lack of cooperation, the Panel determined Respondent had violated Rule 8.1 of the RPC, Rule 407, SCACR, and, thus, subject to discipline for this misconduct pursuant to Rule 7(a)(3), RLDE.[10]

---

failure to appear when specifically ordered by the hearing panel or the Supreme Court shall constitute an admission of the factual allegations that were the subject of such appearance).

9. Rule 7 provides in relevant part that it shall be a ground for discipline for a lawyer to:

(1) violate or attempt to violate the Rules of Professional Conduct, Rule 407, SCACR, or any other rules of this jurisdiction regarding professional conduct of lawyers;

. . .

(5) engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law;

violate the oath of office taken to practice law in this state and contained in Rule 402(k), SCACR.

Rules (7)(a)(1), (5), (6), RLDE, Rule 413, SCACR.

10. Rule 7(a)(3) provides that it shall be a ground for discipline for a lawyer to:

willfully violate a valid order of the Supreme Court, Commission or panels of the Commission in a proceeding under these rules, willfully fail to appear personally as directed, willfully fail to comply with a subpoena issued under these rules, or knowingly fail to respond to a

The Panel found the following aggravating circumstances: (1) Respondent demonstrated a significant pattern of misconduct; (2) Respondent failed to fully cooperate in the disciplinary investigations; (3) Respondent's prior disciplinary history includes a letter of caution with a finding of minor misconduct; and (4) Respondent did not answer the Formal Charges or appear at the hearing.

In view of these findings, the Panel recommended Respondent be disbarred "given Respondent's failure to answer the formal charges and appear at the hearing, coupled with his multiple instances of client neglect, repeated sanctions imposed upon him by the Bankruptcy Court, his trust account mismanagement, and his failure to respond to Disciplinary Counsel." Additionally, the Panel recommended that Respondent be ordered to pay the costs of the proceedings and to reimburse the Lawyers' Fund for Client Protection for any amount paid to clients as a result of his misconduct.

## DISCUSSION

Because Respondent has been found in default and, thus, is deemed to have admitted to all of the factual allegations, the sole question before the Court is whether to accept the Panel's recommended sanction. *See In re Tullis*, 375 S.C. 190, 652 S.E.2d 395 (2007) (recognizing that the Court need only determine the appropriate disciplinary sanction where attorney was found in default and, thus, deemed to have admitted all factual allegations of the formal charges).

"This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record." *In re Thompson*, 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "Although this Court is not bound by the findings of the Panel and Committee, these findings are entitled to great weight." *In re Marshall*, 331 S.C. 514, 519, 498 S.E.2d 869, 871 (1998). "However, this Court may make its own findings of fact and conclusions of law." *Id.* Furthermore, a disciplinary violation must be proven by clear and convincing evidence. *In re Greene*, 371 S.C. 207, 216, 638

---

lawful demand from a disciplinary authority to include a request for a response or appearance under Rule 19(b)(1), (c)(3) or (c)(4).
Rule 7(a)(3), RLDE, Rule 413, SCACR.

S.E.2d 677, 682 (2006); *see* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

We find the Panel's recommended sanction of disbarment is warranted. By his default, Respondent has admitted to committing multiple acts of serious misconduct. Respondent's conduct also indicates an obvious disinterest and indifference to the practice of law given he has left this jurisdiction and has not responded to this disciplinary action. Furthermore, Respondent has an extensive disciplinary history involving: a suspension from practicing in the Bankruptcy Court, a letter of caution from the Commission, a suspension by the Commission on CLE for failure to comply, and a suspension from this Court for failure to comply with CLE.

In cases involving similar instances of attorney misconduct, this Court has found disbarment to be the appropriate sanction. *See In re Okpalaeke,* 374 S.C. 186, 194, 648 S.E.2d 593, 597–98 (2007) (holding disbarment was appropriate sanction where evidence established that attorney had committed "several different acts of serious misconduct," had left "this jurisdiction with the knowledge that disciplinary action against him was imminent," and had failed to answer formal charges or appear at hearings before the Panel or this Court); *In re Tullis,* 375 S.C. at 193, 652 S.E.2d at 395 (concluding disbarment was warranted where attorney: failed to adequately communicate with his clients; failed to act with diligence and competence; misused and mismanaged trust account funds; failed to respond to Disciplinary Counsel inquiries and notices of full investigation regarding these matters; and had an "extensive disciplinary history"); *In re Murph,* 350 S.C. 1, 4, 564 S.E.2d 673, 675 (2002) (holding disbarment was warranted where attorney: failed to answer the formal charges and appear at the hearing before the sub-panel; admitted that he committed criminal acts; failed to respond to Disciplinary Counsel; practiced law on two occasions while on suspension; failed to earn or return over $7,000 in fees; and failed to represent clients competently and diligently in several cases; stating "[a]n attorney's failure to answer charges or appear to defend or explain alleged misconduct indicates an obvious disinterest in the practice of law. Such an attorney is likely to face the most severe sanctions because a central purpose of

the disciplinary process is to protect the public from unscrupulous or indifferent lawyers."); *In re Hall*, 341 S.C. 98, 533 S.E.2d 588 (2000) (concluding disbarment was warranted where evidence established that attorney neglected legal matters, practiced law while under suspension, and failed to respond to disciplinary authority); *In re Wofford*, 330 S.C. 522, 500 S.E.2d 486 (1998) (finding disbarment was justified where attorney: failed to answer formal charges or appear at Panel Hearing or hearing before this Court; failed to provide competent representation, to keep clients reasonably informed, and to promptly deliver funds to third person; and attorney misappropriated client funds and committed criminal acts); *In re Meeder*, 327 S.C. 169, 488 S.E.2d 875 (1997) (determining disbarment was justified where attorney, who responded initially, failed to answer formal charges or ask for panel hearing and continued to represent client after he was suspended for multiple counts of misconduct); *In re Edwards*, 323 S.C. 3, 448 S.E.2d 547 (1994) (holding disbarment was appropriate sanction where attorney failed to keep clients informed, misappropriated or improperly used client funds, knowingly presented false testimony, and failed to cooperate in the investigation of disciplinary charges against him); *In re Sifly*, 279 S.C. 113, 302 S.E.2d 858 (1983) (concluding disbarment was appropriate sanction where attorney failed to appear before the disciplinary panel or the Court and attorney mishandled two cases and wrote "bad" checks).

## CONCLUSION

Based on the foregoing, we disbar Respondent effective the date of this opinion. We further order Respondent to pay the costs of these disciplinary proceedings in the amount of $552.37 and to reimburse the Lawyers' Fund for Client Protection for any amount paid to clients as a result of Respondent's misconduct. Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR, and shall surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.